Filed 2/26/15  P. v. Varrella CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065418 |
| Plaintiff and Respondent, | (Super. Ct. No. F11903496) |
| v. | |
| JOSEPH ANTHONY VARRELLA, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a jury trial in which he represented himself, appellant Joseph Anthony Varrella was convicted of 19 counts of insurance fraud under Penal Code, section 550, subdivision. (a)(1).[1] Varrella raises numerous contentions on appeal. For reasons discussed below, we find merit in his contention that the modified version of CALCRIM No. 2000 given by the trial court in this case presented the jury with a legally defective theory of conviction. Because it is impossible to determine from the record whether the jury's verdicts were based on a legally valid theory of insurance fraud under section 550, subdivision (a)(1), we conclude the judgment must be reversed.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The insurance fraud charges in this case stemmed from the apparent burglary of the residence of Carlene Kostiw, a woman in her seventies, while she was out dining with friends on Thanksgiving in 2008. On her way home, Kostiw picked up Varrella, who had befriended Kostiw a few years earlier.

Although Kostiw returned to find her home in disarray, nothing appeared to be missing or damaged. Later that night, sheriff's deputies came to investigate and take photographs. At the time, Kostiw believed she had been the victim of a real burglary, which she and Varrella had interrupted when they pulled into the driveway. An insurance fraud investigator later opined that Varrella had likely staged the burglary himself.

Kostiw had a homeowner's contract of insurance through American Automobile Association (AAA). For a period of two and a half years following the 2008 burglary, Varrella submitted claims to AAA, making Kostiw "sign for things that were not missing." Kostiw explained Varrella would photocopy blank claims forms and make her sign them through the use of verbal threats and physical force, which included grabbing her hair and spitting in her face.

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

2

Varrella would then fill out the claims forms and submit them to AAA. Varrella would also stay at Kostiw's house to intercept phone calls from AAA employees and others involved in the eventual fraud investigation and represent he was acting on Kostiw's behalf as her assistant.

Whenever a check from AAA would arrive, Varrella would make Kostiw go to the bank to cash the check and take the cash from her. AAA ultimately made a total of $188,919.81 in payments to Kostiw. Investigators recovered the majority of this amount from Varrella through the seizure of cash he gave to his mother and a female acquaintance to hold for him and other property he possessed at several different locations, including "truckloads" of new, heavy-duty construction equipment he had apparently purchased with the insurance proceeds.

On February 1, 2012, the Fresno County District Attorney filed an information charging Varrella with elder or dependent abuse (§ 368, subd. (b); count 1), corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count 2), assault by means likely to produce great bodily injury (§ 245, subd. (a)(1); count 3), and 19 counts of insurance fraud (§ 550, subd. (a)(1); counts 4-22).

Each insurance fraud count alleged that Varrella presented a false or fraudulent insurance claim for a specific loss based on numerous items Varrella, at various times following the 2008 robbery, falsely alleged were damaged or stolen as a result of the burglary. For example, count 4 alleged:

> "On or about November 1, 2008 through May 1, 2011, … the crime of INSURANCE FRAUD, in violation of PENAL CODE SECTION 550, [subdivision] (a)(1), a felony, was committed by Joseph Anthony Varrella, who … did knowingly present and cause to be presented a false and fraudulent claim for the payment of a loss and injury, including payment of a loss under a contract of insurance, to wit, *jewelry stolen in a burglary*." (Italics added.)

3

The remaining 18 counts contained similar language, charging Varrella with presenting false insurance claims for the payment of specific items of loss; i.e., "driveway asphalt" (count 5), "stucco damage to garage" (count 6), "carpenter tools" (count 7), "outside fence/wood panels" (count 8), "replacement safe" (count 9), "damage to storage sheds" (count 10), "loss of various glass, artwork, and collectibles" (count 11), "damage to granite slabs" (count 12), "damage to furniture" (count 13), "damage to mattress" (count 14), "damage to wood flooring" (count 15), "invoice for house repainting" (count 16), "damage to carpet" (count 17), "damage to rugs" (count 18), "damage to faucets" (count 19), "loss of various CDs and DVDs" (count 20), "[M]ont [B]lanc pens" (count 21), and "damage to windows and frames" (count 22).

On May 31, 2012, the jury acquitted Varrella of counts 1 through 3, pertaining to his alleged abuse of Kostiw, but convicted him of all 19 counts of insurance fraud, and found true a special allegation that the total amount of claims presented on the insurance fraud counts exceeded $950. On July 13, 2012, the trial court denied probation and sentenced Varrella to a total term of 21 years as follows: the middle term of three years for count 4, plus 18 consecutive one-year terms (one-third the middle term) for counts 5 through 22. The court ordered Varrella to serve 18 years of his sentence in county jail followed by three years of mandatory supervised release pursuant to section 1170, subdivision (h)(5).

### *DISCUSSION*

Varrella contends that the modified version of CALCRIM No. 2000 given in this case allowed the jury to convict him of violating section 550, subdivision (a)(1) based on conduct constituting a violation of section 550, subdivision (a)(5), which defines a separate *uncharged* crime. We find merit in this contention and conclude reversal is required under *People v. Guiton* (1993) 4 Cal.4th 1116 (*Guiton*).

4

*Guiton* teaches that if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found unsupported by sufficient evidence, reversal is not required if sufficient evidence supports the alternate theory and there is no affirmative basis for concluding the jury relied on the factually unsupported theory because it is presumed jurors would not rely on a factually deficient theory. (*Guiton*, *supra*, 4 Cal.4th at pp. 1128-1129.)

However, if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found legally defective—that is, the theory does not present a legally sufficient basis for conviction—reversal is required unless substantial reasons exist to find that the verdict was based on a legally valid theory. (*Guiton*, *supra*, 4 Cal.4th at p. 1129.) The rationale is that "'[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to the law .… When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.…' [Citation.]" (*Id*. at p. 1125, citing *Griffin v. United States* (1991) 502 U.S. 46, 59.)

Counts 4 through 22 charged Varrella with presenting a false claim in violation of section 550, subdivision (a)(1), which makes it a crime to "[k]nowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance." Case law has established that, when the statute refers to the presentation of an insurance "claim," it uses the term "claim" in its "common meaning" and "intend[s] to proscribe the presentment of any false demand under a policy of insurance irrespective of the form of that demand." (*People v. Teitelbaum* (1958) 163 Cal.App.2d 184, 212.)

It is undisputed that the modified version of CALCRIM No. 2000 given to Varrella's jury erroneously blended elements of the charged offense of presenting a false

5

claim defined in section 550, subdivision (a)(1), with elements of the uncharged offense of preparing a writing in support of a false claim defined in section 550, subdivision (a)(5). Specifically, the instruction stated:

> "The defendant is charged in Counts Four through Twenty-Two with insurance fraud committed by fraudulent claim [in violation of Penal Code section 550(a)].

> "To prove that the defendant is guilty of this crime, the People must prove beyond a reasonable doubt that:

> "1.  The defendant presented or caused to be presented a false or fraudulent claim for payment for a loss of injury;

> "2.  *The defendant prepared or made a document with the intent to present or use it or allow it to be presented to support a false or fraudulent claim*;

> "3.  The defendant knew that the claim was false or fraudulent;

> "AND

> "[4.]   When the defendant did that act, he intended to defraud.

> "Someone intends to defraud if he intends to deceive another person either to cause a loss of money, goods, services, or something else of value, or to cause damage to a legal, financial, or property right.

> "It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts.

> "A person claims, makes, or presents a claim for payment by requesting payment under a contract of insurance for a loss."

The parties on appeal acknowledge that section 550 defines not one but several distinct offenses related to insurance fraud. In *People v. Zanoletti* (2009) 173 Cal.App.4th 547, 556-559 (*Zanoletti*), the court of appeal thus rejected the argument that "the different subdivisions [of section 550] merely describe different means of committing the single offense of insurance fraud" and concluded the appellant there was properly convicted of multiple violations of both section 550, subdivision (a)(1) and

6

section 550, subdivision (a)(5), based on her role in the preparation of fraudulent paperwork for a chiropractic clinic and the paperwork's submission to insurance companies for payment.

The court of appeal also rejected the appellant's argument that "her convictions under section 550, subdivision (a)(1) should be reversed because the crimes were committed as part of the same single intent and plan as the corresponding section 550, subdivision (a)(5) crimes." (*Zanoletti*, *supra*, 173 Cal.App.4th at p. 559.) The court explained:

> "*Insurance fraud under section 550 is … concerned with the means, rather than the end.* As defined in subdivision (a)(5), the crime is complete when an individual '[k]nowingly prepare[s], make[s], or subscribe[s] any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.' Under subdivision (a)(1), the crime is complete when a fraudulent claim is 'presented.' While it can be argued that appellants had a general scheme to present fraudulent insurance claims, nevertheless, *the preparation of any writing with the intent to use it to support a false claim constitutes one violation and the knowing presentation of a false claim constitutes another, separate violation.*" (*Zanoletti*, at p. 560, italics added.)[2]

Here, the prosecution presented evidence showing that Varrella—in the course of an ongoing scheme to obtain benefits under Kostiw's AAA homeowner's policy for losses falsely attributed to the 2008 burglary—engaged in a number of different acts which arguably could constitute violations of both section 550, subdivision (a)(1) *and*

---

[2] The court of appeal recently cited *Zanoletti*, along with other decisions, in support of its observation that, in the context of insurance fraud and similar "crimes that do not monetize and aggregate harm or damage" (as opposed to "crimes that treat harm or damage as one of their elements"), California courts have applied the rule that "a defendant may be convicted of multiple crimes—even if the crimes are part of the same impulse, intention or plan—as long as each conviction reflects a completed criminal act." (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518.)

section 550, subdivision (a)(5). However, the only statutory provision he was charged with violating was section 550, subdivision (a)(1), which, as discussed above, specifically proscribes the act of presenting a false claim for the payment of a loss under an insurance contract. Therefore, the modified version of CALCRIM No. 2000 given in the case, which included elements of both the charged and uncharged offenses, presented the jury with a legally insufficient theory of conviction insofar as it incorrectly suggested the jury could rely on fraudulent conduct constituting a violation of section 550, subdivision (a)(5) to convict Varrella of violating section 550, subdivision (a)(1), as charged in the 19 insurance fraud counts.

The prosecutor further advanced this legally invalid theory in closing argument by specifically referencing the section 550, subdivision (a)(5) elements erroneously included in CALCRIM No. 2000 and asserting Varrella was guilty of fraud under those elements.[3] The prosecutor also broadly asserted: "I know we think 19 [counts] is a lot, but really it could have been 100 or 200 … because *every action* that he did, *every document* that he submitted *is an actionable fraud*." (Italics added.) Clearly, not every deceitful act Varrella committed in furtherance of his scheme to defraud the insurance company was actionable under the charges against him, but only those acts which were found to constitute the presentation of a false claim for the payment of a loss under a contract of insurance within the meaning of section 550, subdivision (a)(1).

In short, because the court's jury instructions and the prosecutor's arguments presented the state's case to the jury on both valid and invalid legal theories, and we are unable to determine from the record which theory the jury relied on in rendering its

---

[3]     In this regard, the prosecutor argued: *"The defendant prepared or made a document with the intent that it be used in support of a false claim. So anything he prepared, all the handwriting of PLI's, all the other things that he submitted back*, even the Exhibit I that he says he didn't do that he did do, but even by him writing something on the document and sending it back to the insurance company, that by itself *was a fraud as well*." (Italics added.)

8

verdicts, or to conclude substantial reasons exist to find the jury relied on a legally valid theory, the judgment must be reversed. (*Guiton*, *supra*, 4 Cal.4th at p. 1129.)

In so concluding, we are not persuaded by the People's argument that the concededly erroneous version of CALCRIM No. 2000 given here did not prejudice Varrella because it *added* elements the prosecution was required to prove and thereby heightened its burden of proof on the insurance fraud counts. According to this argument, the jury would have understood the instruction as requiring it to find that Varrella not only presented the particular false claim alleged in each count but also prepared or made a document with the intent to use it in support of that claim. Assuming the jury adopted this understanding of the instruction, since the prosecution did not argue or attempt to show that Varrella prepared or made a writing to support each and every false claim he allegedly presented in violation of section 550, subdivision (a)(1), one would reasonably have expected the jury to acquit Varrella on some of the charges.[4] But that is not what happened. Instead, the jury convicted him of all 19 counts of insurance fraud, indicating the erroneous inclusion of the section 550, subdivision (a)(5) elements did not inure to Varrella's benefit by subjecting the prosecution to a heightened burden of proof.

In view of our conclusion that reversal is required due to *Guiton* error, we need not and do not reach Varrella's other claims on appeal. To do so would be immature and

---

[4]     As just an example, count 16 alleged that Varrella knowingly presented a false claim for the payment of a loss under an insurance contract, "to wit, [an] invoice for house repainting." The document the prosecution identified as embodying this false claim was a contractor's invoice Varrella submitted to AAA. However, the prosecution's evidence also established the document was a genuine invoice *prepared by Kostiw's contractor* for work he actually did on her house *unrelated to the 2008 burglary*. In other words, the prosecution did not, in connection with the section 550, subdivision (a)(1) charged based on Varrella's submission of the contractor's invoice to the insurance company, establish a corresponding violation of section 550, subdivision (a)(5), such as by presenting evidence Varrella procured or aided and abetted the contractor in the preparation or making of the invoice, with the requisite fraudulent intent. (See, e.g., *People v. Singh* (1995) 37 Cal.App.4th 1343, 1376.)

9

constitute an advisory opinion, the rendering of which "'falls within neither the functions nor the jurisdiction of this court.' [Citation.]" (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 860.)

## *DISPOSITION*

The judgment is reversed.


_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
GOMES, J.

10