Opinion
DUARTE, J.
When a criminal defendant is found mentally incompetent to stand trial (1ST), the trial court orders such defendant to be delivered by the sheriff to a state hospital or other treatment facility for treatment to restore *128 the defendant to mental competence, or places the defendant on outpatient status. (Pen. Code, § 1370, subd. (a)(l)(B)(i).)[1]
In 2005, the Sacramento County Public Defender (the Public Defender) filed a petition for writ of habeas corpus on behalf of David Osburn and others, contending the Sacramento County Sheriff (the Sheriff) had unlawfully detained petitioners at the county jail by failing to transfer them on a timely basis to a state hospital for restorative treatment. After several rounds of briefing, and an evidentiary hearing, the trial court issued an order (the Osburn Order) commanding that the Sheriff deliver to Napa State Hospital (NSH) all criminal defendants ordered committed to NSH pursuant to section 1370 within seven days of the commitment. The Osburn Order was amended to require the prisoners’ delivery within seven days of the commitment or as soon as the packet of documents required under section 1370 (the section 1370 packet) was available. There was no appeal from the Osburn Order.
In 2013, the Public Defender sought an order to show cause for contempt, alleging the Sheriff had violated the Osburn Order by holding several defendants who had been found 1ST at the jail rather than timely transferring them to NSH. In response, the State Department of State Hospitals (the Department) moved to set aside the Osburn Order. The trial court denied the motion but modified the Osburn Order to extend the seven-day deadline to 14 days. The Department appealed from this 2013 order “denying [the Department’s] motion to set aside the transfer deadline established by this Court” in the Osburn Order.
On appeal, the Department contends (1) the trial court acted in excess of its jurisdiction, and violated the separation of powers doctrine, by inserting a 14-day deadline into section 1370 and thereby undermining the Department’s duties; (2) the original Osburn Order and the 2013 modification were contrary to established habeas corpus procedures and constituted improperly promulgated local rules; and (3) the Osburn Order should be set aside due to changes in the law and because it results in unequal treatment of defendants found 1ST in different counties.
We view the Osburn Order as an injunction (as did the trial court) and the Department’s 2013 motion to vacate as a motion to dissolve the injunction. Such a motion can be granted upon a showing of a change in the facts, a change in the law, or because the interests of justice so require. (Code Civ. Proc., § 533.) During the pendency of this appeal, there was a material change in the law. Recent amendments to section 1370 and other statutes affect various aspects of the Osburn Order. Accordingly, we remand the *129 matter to the trial court to reconsider its ruling on the Department’s motion in light of the change in the law, and to conduct a new evidentiary hearing. We dissolve the Osbum Order pending reconsideration of the ruling.
BACKGROUND

The Statutory Scheme for and the Constitutional Rights of 1ST Defendants

If at any time before judgment in a criminal trial a doubt arises as to the defendant’s mental competence, the court shall order a hearing into the present mental competence of the defendant. (§ 1368.) If the defendant is found mentally competent, the criminal process shall resume. (§ 1370, subd. (a)(1)(A).) “If the defendant is found mentally incompetent, the trial, the hearing on the alleged violation, or the judgment shall be suspended until the person becomes mentally competent.” (Id., subd. (a)(1)(B).)
“In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital . . . ,” or other approved available treatment facility that “will promote the defendant’s speedy restoration to mental competence.” (§ 1370, subd. (a)(l)(B)(i).) Alternatively, the court may order the defendant placed on outpatient status. (Ibid.) Before a court makes a commitment order to a state hospital, the court shall order the community program director, or his designee, to evaluate the defendant and submit to the court, within 15 judicial days, a written recommendation as to whether the defendant should be committed to a state hospital or other treatment facility or required to undergo outpatient treatment. (§ 1370, subd. (a)(2).)
The court is also required to provide the section 1370 packet to the treatment facility. These documents include the commitment order, a computation of the defendant’s maximum term of commitment and amount of credit for time served, criminal history information, arrest reports, any court-ordered psychiatric examination or evaluation reports, the community program director’s placement recommendation, records of any finding of incompetence arising out of a complaint charging a felony specified in section 290, and medical records.[2] (§ 1370, subd. (a)(3).)
Once the defendant has been admitted to a state hospital, a progress report on his restoration to competence is required. “Within 90 days of a commitment ... , the medical director of the state hospital or other treatment facility *130 to which the defendant is confined shall make a written report to the court and the community program director for the county or region of commitment, or a designee, concerning the defendant’s progress toward recovery of mental competence . . . .” (§ 1370, subd. (b)(1).)
In Jackson v. Indiana (1972) 406 U.S. 715, 738 [32 L.Ed.2d 435, 451, 92 S.Ct. 1845], the United States Supreme Court held “a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.” (Fn. omitted.)
The next year, our Supreme Court reviewed “the constitutionality of the procedures ([§ 1367 et seq.]) for the commitment to, and release from, state hospital of defendants in criminal cases who have been found to lack sufficient mental competence to stand trial.” (In re Davis (1973) 8 Cal.3d 798, 801 [106 Cal.Rptr. 178, 505 P.2d 1018], fn. omitted (Davis).) The court concluded that the petitioners’ initial commitments were proper, but “acknowledge[d] that some provision must be made to assure that petitioners do not face an indefinite commitment without regard to the likelihood that they will eventually regain their competence, for such an indefinite commitment has been held to offend constitutional principles of equal protection and due process. [Citation.] [¶] Accordingly, we adopt the rule of the Jackson case that no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future. Unless such a showing of probable recovery is made within this period, defendant must either be released or recommitted under alternative commitment procedures.” {Ibid.)
Following Davis, section 1370 was amended to provide for a maximum period of confinement of three years for defendants found 1ST. (Stats. 1974, ch. 1511, § 6, p. 3318.) Section 1370, subdivision (c)(1), provides as follows: “At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by *131 law for a violation of probation or mandatory supervision, whichever is shorter, but no later than 90 days prior to the expiration of the defendant’s term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court. The court shall notify the community program director or a designee of the return and of any resulting court orders.”
In In re Mille (2010) 182 Cal.App.4th 635 [105 Cal.Rptr.3d 859] (Mille), another appellate court addressed the claim that an 84-day delay in transferring an 1ST defendant from the county jail to the state hospital was unlawful. The court focused on the requirement in section 1370, subdivision (b)(1), that the medical director of the state hospital report to the court within 90 days of commitment on the defendant’s progress toward recovery of mental competence. (Mille, at p. 645.) “When a defendant arrives at Patton [State Hospital] on day 84 of the 90-day period, there is no meaningful opportunity for the defendant to make progress toward recovery of mental competence, let alone for the medical director of the hospital to make a written report to the court concerning such progress by the defendant.” (Ibid.)
The court rejected the argument that the defendant was receiving appropriate treatment at the jail, which was a designated treatment facility under section 1369.1 and thus able to provide antipsychotic medications. It found that providing a defendant with antipsychotic medication alone was not the equivalent of treatment in a state hospital where each patient had a treatment team of a psychiatrist, psychologist, nurse, social worker, and psychiatric technician, and received both pharmacological and nonpharmacological treatment. (Mille, supra, 182 Cal.App.4th at p. 648.)
The Mille court found a defendant must be transferred from the county jail to a state hospital within a reasonable time, determined in the context of the 90-day reporting requirement. “Constitutional principles prohibit a defendant from being held ‘more than the reasonable’ period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. [Citations.] Therefore, when the court orders a defendant committed to a state mental hospital for treatment that will promote a defendant’s ‘speedy restoration to mental competence’ (§ 1370, subd. (a)(l)(B)(i)), the court must also ensure that the defendant is actually transferred to the state hospital within a reasonable period of time.” (Mille, supra, 182 Cal.App.4th at p. 650.)
The Mille court declined “ ‘to attempt to prescribe arbitrary time limits’ ” for the transfer from the county jail to state hospital for treatment. (Mille, supra, 182 Cal.App.4th at p. 649; see id. at pp. 649-650.) The court noted, however, that Mille filed his initial habeas corpus petition 30 days after the *132 order for his commitment, and the trial court denied it 49 days into the 90-day reporting period. (Id. at p. 649.) The court found the superior court should have granted the petition. (Ibid.) “[A] defendant needs sufficient time at the state mental hospital to be duly evaluated, potentially to derive some benefit from the prescribed treatment, and for such progress to be reported to the court.” (Id. at p. 650.)

The 2005 and 2006 Proceedings and the Osburn Order

In the fall of 2005, the Public Defender filed a petition for a writ of habeas corpus on behalf of Osburn and three others. The petition alleged the petitioners were criminal defendants with pending cases who had been found 1ST. The court had ordered each transferred to NSH. Petitioners had been held at the county jail for months after the commitment orders. Although Osburn had finally been transferred to NSH, the issue was not moot because the three others were still held at the county jail and the issue of prolonged detention before transfer to a state hospital was an ongoing problem. The petition alleged the prolonged confinement in the county jail was an unlawful restraint on liberty, citing Oregon Advocacy Center v. Mink (9th Cir. 2003) 322 F.3d 1101 (Mink), in which the Ninth Circuit upheld an injunction mandating that incompetent criminal defendants be transferred to a state hospital within seven days of the commitment order.
The trial court issued an order to show cause to the Sheriff and set a shortened briefing schedule. The Sheriff’s return alleged the delay in transfer was due to incomplete commitment orders, NSH’s lengthy classification process, and the shortage of bed space. The Sheriff indicated the entire process for admission to a state hospital takes 60 to 90 days.
The court issued a supplemental order to show cause to permit the Attorney General and the Department of Mental Health (now the Department; see Stats. 2012, eh. 440) to respond. The court ordered the parties to brief issues concerning the availability of beds at NSH, alternatives if no beds were available, and whether the court should issue a permanent injunction requiring delivery of a defendant to NSH within seven days of the commitment order and that the Sheriff should return to court if unable to comply with the injunction. Subsequently, the court ordered an evidentiary hearing to determine what remedies, if any, should be ordered to alleviate the problem of delayed transfers to NSH.
Following the evidentiary hearing, the trial court issued the 65-page Osburn Order. The Osburn Order first detailed the procedural background of the case and testimony received at the hearing. The court then made several findings of fact. Criminal defendants in Sacramento County who had *133 been charged with a felony, found 1ST, and ordered committed to a state hospital pursuant to section 1370 “are being held in the Sacramento County Jail for months while awaiting transportation to a state hospital.” These defendants were administered psychiatric medications in the jail, but received no treatment toward restoration of competency. Under current policies, these defendants were to be transferred only to NSH, and only after an intake package (including more documentation than required by § 1370) had been received by NSH, the defendant had been placed on a waiting list, and a bed became available. In some cases, the delay was due to the delay of court personnel in compiling the intake package. There were no available local alternatives to the state hospital.
The court declined to find the matter moot, although all the petitioners had been transferred to the state hospital. The court found the matter to be one of broad public interest and likely to recur. The court found Mink, supra, 322 F.3d 1101 to be persuasive authority, and that the California statutory scheme was similar to that in Oregon. The court concluded, “It is abundantly clear that the constitutional rights of [section 1370] committees are being violated as each day passes and they remain in the Sacramento County Jail awaiting transfer to a state hospital.” If this violation continued, “the result will be the constitutionally compelled release of such persons.” The court found a remedy was required for the constitutional violation and a remedy similar to that in Mink was appropriate.
The court granted the petition for writ of habeas corpus, and ordered the Sheriff to deliver all section 1370 committees who had been committed to NSH more than seven days before and were still in the county jail to NSH within 60 days of the order. Thereafter, such deliveries were to occur within seven days of the order of commitment. NSH was ordered to accept delivery of these persons, to house them, and to provide treatment as required by section 1370.
The Department moved for reconsideration or clarification as to whether it was now required to accept section 1370 committees before it had received the section 1370 packet, and whether it could send such persons to other state hospitals or facilities.
The trial court amended the Osbum Order to provide that the deadline for transfer to a state hospital would be extended if the section 1370 packet had not been prepared. In that case, the Sheriff was to deliver the defendant to the state hospital as soon as the section 1370 packet was made available. The court declined to amend the Osbum Order to permit the Department to transfer a section 1370 committee to another facility. The statute required the court, not the Department, to designate the state hospital.
*134 No appeal was taken from the Osburn Order.

The 2013 Proceedings and Modification of Osburn Order

On September 9, 2013, the Public Defender requested an order to show cause on behalf of Joseph Brewer and four other defendants as to why NSH should not be held in contempt for violating the Osburn Order by failing to accept petitioners after their 1370 packets were complete and more than seven days after their orders of commitment. The Public Defender subsequently filed a similar order to show cause on behalf of seven other defendants.
In response, the Department moved to set aside the Osburn Order. The Department argued that (1) it was no longer able to comply with the Osburn Order due to the increase in the number of defendants found 1ST, while the number of beds for such patients remained static; (2) because Sacramento County required transfer of these prisoners within seven days of the commitment order, the San Joaquin County Public Defender was now claiming a violation of equal protection based on the delays in transporting its similarly situated prisoners; and (3) the Osburn Order was subject to question after Mille, supra, 182 Cal.App.4th 635.
The Department requested the court take judicial notice of charts showing the increase in section 1370 referrals, particularly from Sacramento County, and a report about a pilot program to treat in county jails those prisoners found 1ST. A declaration from a Department staff psychiatrist stated that since 2010, the number of 1ST admittees had increased, and the number from Sacramento County was greater than from other counties of the same size. Due to the Osburn Order, those committed in Sacramento County received preference in admission. Although the Department had taken steps to reduce the length of stay from admittance to discharge from an average of 180 days to an average of 60 days, NSH was unable to meet the seven-day deadline, or even a 30-day deadline. A declaration from the Department’s chief of business management confirmed that the Department could not guarantee a 30-day, let alone a seven-day, admission, and asked that the Osburn Order be set aside to permit uniform triage.
As to the request for an order to show cause for contempt, the trial court ordered the Department to provide documentary evidence by a certain date showing that all defendants had been transferred to and accepted by a state hospital. If the Department timely submitted the evidence, the matter would be moot and the order to show cause discharged; if the Department failed to timely submit the evidence, it would face a contempt finding.
The trial court declined to vacate the Osburn Order, but modified it to extend the seven-day period for delivery to a state hospital to 14 days. The *135 court recognized the seven-day deadline in the Osburn Order “may be unrealistic in light of the severe budget cuts suffered by a plethora of state agencies in the past few years. Nevertheless, this court remains firm in the stance that the Legislature and due process require delivery of [section 1370] committees, within a reasonable time frame as noted in In re Mille[, supra,] 182 Cal.App.4th 635 [105 Cal.Rptr.3d 859].” The court also added a provision to the Osburn Order requiring the Sheriff to notify the state hospital that an order has been made as soon as the Sheriff takes custody of the defendant upon order of commitment.
The Department appealed from this 2013 order modifying the Osburn Order but declining to set it aside.
DISCUSSION
I

Standard of Review

The Osburn Order, in directing the Sheriff to deliver to the state hospital within a certain time period criminal defendants who have been committed to a state hospital after having been found incompetent to stand trial, granted injunctive relief. “An injunction is statutorily defined to be ‘a writ or order requiring a person to refrain from a particular act.’ (Code Civ. Proc., § 525.) While the statute seems to limit that definition to prohibitory injunctions, an injunction may also be mandatory, i.e., may compel the performance of an affirmative act. [Citations.] In short, an injunction may be more completely defined as a writ or order commanding a person either to perform or to refrain from performing a particular act. [Citation.]” (McDowell v. Watson (1997) 59 Cal.App.4th 1155, 1160 [69 Cal.Rptr.2d 692].)
Accordingly, the Department’s motion to set aside the Osburn Order was a motion to dissolve the injunction. “In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order.” (Code Civ. Proc., § 533; accord, Civ. Code, § 3424, subd. (a) [grounds for modifying or dissolving “final” injunction].) An order refusing to dissolve an injunction is an appeal-able order. (Code Civ. Proc., § 904.1, subd. (a)(6).)
*136 An order “ ‘ “refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case” ’ and ‘will not be modified or dissolved on appeal except for an abuse of discretion.’ ” (Salazar v. Eastin (1995) 9 Cal.4th 836, 850 [39 Cal.Rptr.2d 21, 890 P.2d 43].)
II

Trial Court’s Authority to Issue the Osburn Order

The Department contends the trial court lacked authority to issue the Osburn Order, offering several reasons why the court could not issue the order. We reject some arguments and find the Department has forfeited others by failing to raise them in 2006 when the Osburn Order first issued.
First, in a cursory argument, the Department contends the trial court “acted in excess of its jurisdiction by inserting a 14-day deadline into [section 1370] in violation of the separation of powers doctrine.” The Department argues the court acted in a legislative capacity by inserting any admission deadline into section 1370.
“Essentially, jurisdictional errors are of two types. ‘Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.’ [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and ‘thus vulnerable to direct or collateral attack at any time.’ [Citation.]” (People v. American Contractors Indemnity Co. (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020] {American Contractors).) The phrase “lack of jurisdiction” “may also ‘be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no “jurisdiction” (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.’ [Citation.] ‘ “[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction.” ’ [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by ‘principles of estoppel, disfavor of collateral attack or res judicata.’ [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless ‘unusual circumstances were present which prevented an earlier and more appropriate attack.’ [Citations.]” (Id. at p. 661.)
*137 The Osbum Order originally provided a seven-day deadline for transferring defendants to the state hospital. It is the imposition of a deadline — any deadline — that the Department attacks in this appeal, rather than the time period of the deadline; after all, the subsequent (2013) modification (to 14 days) is more favorable to the Department than was the original order. The Department’s basic contention that the court lacks fundamental jurisdiction to impose any transfer deadline fails. As Mille teaches, section 1370 itself provides a deadline for transfer to a state hospital by requiring the medical director of the state hospital to provide a progress report to the court within 90 days of commitment. (§ 1370, subd. (b)(1).) To permit a meaningful progress report, the transfer must occur before the end of 90 days. Mille requires the transport of an 1ST defendant to a state hospital within a reasonable time; the reasonable time must be determined by reference to the 90-day report. (Mille, supra, 182 Cal.App.4th at p. 648.) In setting a deadline for transfer, a court is not rewriting or adding to the statute. Instead, the court is enforcing the statutory imperative for a meaningful progress report within 90 days of the commitment order. The court can do this only by “ensuring] that the defendant is actually transferred to the state hospital within a reasonable period of time.” (Id. at p. 650.) Setting a deadline — establishing the outer limit of a reasonable time — does not violate the separation of powers doctrine. A court acts within its constitutional core function and does not violate the separation of powers doctrine when it interprets and applies existing laws and carries out the legislative purpose of statutes. (Perez v. Roe 1 (2006) 146 Cal.App.4th 171, 176-177 [52 Cal.Rptr.3d 762].) That is all the transfer deadline does.
The Department contends the Osbum Order “is untethered to the unique circumstances and health needs of individual 1ST defendants.” The Department’s objection to a single deadline for transfer of all 1ST defendants is not a claim that the court exercised a power it did not legally possess. Instead, this contention objects to the manner in which the court exercised its power, by applying it to all 1ST defendants rather than specific defendants individually. Thus, the Department’s argument is that the court had no power “ ‘to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.’ ” (American Contractors, supra, 33 Cal.4th at p. 661.) The Department does not offer any “ ‘unusual circumstances’ ” that “ ‘prevented an earlier and more appropriate attack’ ” on the original Osburn Order and none are apparent. {Ibid.) The Department has forfeited its claim that the court’s actions were in excess of its jurisdiction because it failed to raise it in a timely manner. “Whereas a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted. [Citation.]” (People v. Ramirez (2008) 159 Cal.App.4th 1412, 1422 [72 Cal.Rptr.3d 340].)
*138 Second, the Department contends the Osburn Order “obviates established habeas procedures” by granting relief beyond the claims of petitioners and dispensing with briefing and hearing process by permitting immediate issuance of an order to show cause as to contempt. We do not read the Department’s contention to be a challenge to the court’s fundamental jurisdiction to issue the Osburn Order. If it is such a challenge, it fails.
“It is a well established rule that habeas corpus may be sought by one lawfully in custody for the purpose of vindicating rights to which he is entitled in confinement. [Citations.]” (In re Jordan (1972) 7 Cal.3d 930, 932 [103 Cal.Rptr. 849, 500 P.2d 873].) “Irrespective of mootness, a habeas corpus petition is ‘an acceptable vehicle for a general declaration of the procedural rights of individuals detained’ involving an issue of general public concern, particularly if it pertains to the administration of criminal justice. [Citation.]” (In re Brindle (1979) 91 Cal.App.3d 660, 675 [154 Cal.Rptr. 563].) “[A] trial court may grant habeas corpus petitioners ‘prospective or class relief’ to redress recurring deprivations of rights at correctional facilities. [(Citing Brindle.)] The writ is thus an effective and versatile means by which to remedy persistent violations of prisoners’ rights, and has been so used. [Citation.]” (Mendoza v. County of Tulare (1982) 128 Cal.App.3d 403, 420 [180 Cal.Rptr. 347]; see In re Morales (2013) 212 Cal.App.4th 1410 [152 Cal.Rptr.3d 123] [writ of habeas corpus to enforce order prohibiting preferential treatment to inmates on basis of ethnicity].) The scope of the writ of habeas corpus has been expanded to include “use by one lawfully in custody to obtain a declaration and enforcement of rights in confinement.” (In re Bittaker (1997) 55 Cal.App.4th 1004, 1010 [64 Cal.Rptr.2d 679].)
Third, the Department contends the Osburn Order is really a local rule and it was improperly promulgated, without the required notice, comment period, and adoption by the majority of the judges on the Sacramento Superior Court. We disagree with the Department’s characterization; as discussed ante, we find the Osburn Order to be an injunction, not a local rule. In its reply brief, the Department agrees the Osburn Order “functions as an injunction.”
Ill

Grounds to Vacate Osburn Order/Dissolve Injunction

As set forth ante, Code of Civil Procedure section 533 “articulates three independent bases on which a modification of an injunction may be predicated — (1) [material] change in the facts, (2) change in the law, or (3) ends of justice.” (Luckett v. Panos (2008) 161 Cal.App.4th 77, 85 [73 Cal.Rptr.3d 745].)
*139 A. Change in the Facts
The Department sought to set aside the Osbum Order, in part, due to a change of facts: the increased number of defendants committed under section 1370, the lack of new beds to accommodate the increase, and budget constraints. The trial court accepted that the state agencies’ budgets had been further constrained and modified the Osbum Order accordingly. On appeal, the Department does not contend that the modification is insufficient to address the changed facts, or that the change of facts requires that the Osburn Order be set aside and the trial court’s failure to do so was an abuse of discretion. Because the Department does not raise this issue on appeal, it has abandoned the issue. (Tan v. California Fed. Sav. & Loan Assn. (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775] [issues not raised in an appellate brief are deemed abandoned].)
B. Change in Law
1. The Mille Decision
The Department contends the amended Osburn Order violates Mille, supra, 182 Cal.App.4th 635, a decision filed four years after the. original Osburn Order. The Department contends the 14-day deadline contradicts Mille’s “reasonable period of time” standard. The Department focuses on the need for discretion to determine the admission date on a patient-by-patient basis, citing the time needed to evaluate the patient’s security risk, to review the section 1370 packet, and to comply with population caps at certain state hospitals. The Mille decision, however, did not discuss any of these concerns. Instead, it focused solely on the progress report that must be issued within 90 days of the order of commitment. (§ 1370, subd. (b)(1).) “For all of this to occur, a defendant needs sufficient time at the state mental hospital to be duly evaluated, potentially to derive some benefit from the prescribed treatment, and for such progress to be reported to the court.” (Mille, at p. 650, italics added.) The Mille court was concerned with the period of time within which the defendant must be evaluated while at the state hospital, not the time the Department needed to secure his admission thereto.
In issuing the Osburn Order, the trial court determined the “reasonable period of time” was seven days, later modified to 14 days. In this regard, the Osburn Order fulfills the mandate of Mille that the trial court “ensure that the defendant is actually transferred to the state hospital within a reasonable period of time.” (Mille, supra, 182 Cal.App.4th at p. 650.) While the Department could have challenged the original seven-day order as unreasonable, it did not. The Department does not explain why 14 days is now *140 unreasonable where seven days was not. Nothing in Mille changes the law so as to classify the trial court’s refusal to dissolve the Osburn Order as an abuse of discretion.
2. Amendments to Section 1370
In 2014, the Governor signed Assembly Bill No. 1468 (2013-2014 Reg. Sess.) June 20, 2014 (Assembly Bill 1468), an urgency measure that amended section 1370 and other statutes. (Stats. 2014, ch. 26, eff. June 20, 2014.) We requested supplemental briefing from the parties as to the effect, if any, of these amendments on this case. Both parties agree that Assembly Bill 1468 made changes that affect the Osburn Order, but without specifically addressing the timeframe for transferring an 1ST defendant to a state hospital.
Assembly Bill 1468 is a lengthy budget bill relating to public safety. As pertinent to this case, the bill made changes that affect the commitment of 1ST defendants to a state hospital. The Legislative Counsel’s Digest summarized these changes: “This bill would repeal the provision requiring the court to select the state hospital in accordance with the policies established by the [Department] when directing that the defendant be confined in a state hospital. The bill would instead require, prior to admission to the [Department], the [Department to evaluate each patient committed pursuant to specified provisions of law to determine the placement of the patient to the appropriate state hospital. The bill would also require a court that orders that a defendant be committed to the [Department] or other public or private treatment facility to provide copies of any medical records with the documents described above prior to the admission of the defendant to the [Department or other treatment facility where the defendant is to be committed. The bill would require the [D]epartment to utilize specified documents, including those described above and any medical records, to make the appropriate placement. The bill would make conforming changes.” (Legis. Counsel’s Dig., Assem. Bill 1468, Stats. 2014, ch. 26.)
Under the former version of section 1370, the trial court selected the state hospital to which the 1ST defendant was committed. “When directing that the defendant be confined in a state hospital pursuant to this subdivision, the court shall select the hospital in accordance with the policies established by the [Department].” (Former § 1370, subd. (a)(5), as amended by Stats. 2012, ch. 24, § 27.) Now, under Assembly Bill 1468, the court commits the defendant to the Department, which selects the placement location. (§ 1370, subd. (a)(5).) Assembly Bill 1468 amended Welfare and Institutions Code section 7228, which now provides: “Prior to admission, the [Department] shall evaluate each patient committed pursuant to Section 1026 or 1370 of the Penal Code to determine the placement of the patient to the appropriate state hospital. *141 The [Department] shall utilize the documents provided pursuant to subdivision (e) of Section 1026 of the Penal Code and paragraph (2) of subdivision (b) of Section 1370 of the Penal Code to make the appropriate placement. A patient determined to be a high security risk shall be treated in the [Department's most secure facilities pursuant to Section 7230. A Penal Code patient not needing this level of security shall be treated as near to the patient’s community as possible if an appropriate treatment program is available.”
Another change affected by Assembly Bill 1468 is that the section 1370 packet must now to be sent to the Department prior to the defendant’s admission. (§ 1370, subd. (a)(3).) Previously, the documents “shall be taken with the defendant to the state hospital or other treatment facility where the defendant is to be confined.” (Former § 1370, subd. (a)(3), as amended by Stats. 2012, ch. 24, § 27, italics added.)
Both of these changes in the law affect the Osburn Order. The Osbum Order directs the Sheriff to deliver the defendant to the state hospital designated in the commitment order. But the commitment order will no longer designate the state hospital. The Osburn Order also requires the Sheriff to deliver the defendant within 14 days of the commitment order or as soon as the section 1370 packet is available. Now the law requires that the section 1370 packet be sent to the Department prior to the defendant’s admission. These provisions of the Osbum Order are no longer valid.
While Brewer contends the Osbum Order remains valid if the invalidated provisions are changed to conform to Assembly Bill 1468, the Department counters that Assembly Bill 1468 demonstrates the legislative intent to vest the Department with discretion in the admission of 1ST defendants to state hospitals, and the Osbum Order improperly infringes upon that discretion and therefore must be overturned.
In response to Assembly Bill 1468, the trial court issued an order modifying the amended Osbum Order. This modification requires the Sheriff to deliver a defendant committed under section 1370 to the state hospital designated by the Department within 14 days of the commitment order unless the section 1370 packet has not been prepared, in which case the Sheriff shall deliver the defendant to the state hospital as soon as the section 1370 packet is made available. We requested supplemental briefing from the parties as to whether the trial court retained jurisdiction to issue this modification and, assuming the modification is valid, its effect on the parties’ respective positions in this case. The parties disagree as to the trial court’s jurisdiction to issue the modification, but agree the modification did not change their positions. ■
*142 We find the trial court lacked jurisdiction to issue the modification so it is void. As discussed ante, we view the Osbum Order as an injunction and the Department’s motion to set aside the Osburn Order as a motion to dissolve the injunction. The trial court’s 2013 order denied the Department’s motion, but amended the Osburn Order. That 2013 order is the subject of this appeal. “The trial court’s power to enforce, vacate or modify an appealed judgment or order is suspended while the appeal is pending. [Citations.]” (Elsea v. Saberi (1992) 4 Cal.App.4th 625, 629 [5 Cal.Rptr.2d 742], cited with approval in Varian Medical Systems, Inc. v. Delfino (2005) 35 Cal.4th 180, 189-190 [25 Cal.Rptr.3d 298, 106 P.3d 958].) “[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby . . . .” (Code Civ. Proc., § 916, subd. (a).)
We find Assembly Bill 1468 may have a greater effect on the Osburn Order than simply the changes discussed ante. These changes in the law may also affect the reasonableness of a mandatory 14-day deadline for transfer to the state hospital after the commitment order. The Department now has additional duties to perform before admission of a defendant to a state hospital, including selecting the most appropriate hospital or treatment facility for restorative treatment after review of the section 1370 packet and other documents. Compilation of the section 1370 packet may take additional time as it now must include the defendant’s medical records. (§ 1370, subd. (a)(3)(I).) The trial court must carefully consider whether the 14-day deadline is reasonable in light of these additional duties.
Indeed, given the additional individualized assessment now required after the Department receives the section 1370 packet, the trial court must determine not only whether a short 14-day deadline from the date of the commitment order is reasonable, but also whether any deadline should be triggered by the commitment order or by the Department’s receipt of the section 1370 packet. The trial court must hold a new evidentiary hearing to ascertain how much time is reasonable, after the section 1370 packet is prepared and sent to the Department, to accommodate both the Department’s duties prior to delivering 1ST defendants to the designated hospital or other treatment facility and the statutory requirement of a progress report from such hospital or facility within 90 days of commitment. (§ 1370, subd. (b)(1).)
A material change in the law, Assembly Bill 1468, which was not before the trial court, requires reconsideration of the Department’s motion to set aside the Osbum Order. The change in the law requires, at the very least, additional modifications to the Osburn Order. We shall direct the trial court to vacate its order denying the motion to set aside the Osbum Order and we remand for reconsideration of that motion with an evidentiary hearing and *143 any further proceedings the trial court determines necessary or appropriate. We shall dissolve the injunction currently in place in the form of the Osburn Order pending ruling on reconsideration of the motion to set aside.
Given our disposition of this action, we do not address the Department’s contention that the Osburn Order has exposed the Department to lawsuits from criminal defendants in other counties claiming a violation of equal protection. We deny the Department’s related request for judicial notice of orders from other counties establishing timeframes for the transfer of criminal defendants found incompetent to stand trial because such documents are unnecessary to our resolution of this appeal. (County of San Diego v. State of California (2008) 164 Cal.App.4th 580, 613, fn. 29 [79 Cal.Rptr.3d 489].)
DISPOSITION
The trial court’s order denying the motion to set aside the Osburn Order (dissolve the injunction) is reversed. The matter is remanded to the trial court with directions to reconsider the Department’s motion to set aside the Osburn Order, in light of the changes to the law in Assembly Bill 1468. Pending resolution of the reconsideration of the Department’s motion, the injunction is dissolved.
Butz, J., concurred.

 Further undesignated statutory references are to the Penal Code.

 As we discuss post, the Legislature recently added medical records to the list of documents required to be included in the section 1370 packet.